# In the United States Court of Federal Claims

No. 19-1378C
(Filed: November 6, 2019)*
Order Originally Filed Under Seal October 28, 2019

|  |  |  |
|---|---|---|
| POPLAR POINT RBBR, LLC, | ) | Bid Protest; Motion to Complete the |
|  | ) | Administrative Record; Deliberative |
| Plaintiff, | ) | Process Privilege |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| THE UNITED STATES, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

*Richard J. Conway*, Washington, D.C., for plaintiff, *Michael J. Slattery*, New York, NY, and *Sara M. Gerber*, Washington, D.C., of counsel.

*Ann C. Motto*, Civil Division, United States Department of Justice, Washington, D.C., with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, for defendant. *Adetokunbo Falade*, General Services Administration, Washington, D.C., of counsel.

**ORDER DENYING MOTION TO COMPLETE THE RECORD**

**FIRESTONE**, *Senior Judge*.

In this bid protest case, Poplar Point RBBR, LLC challenges the General Services Administration's (GSA) evaluation and exclusion from award consideration of a proposal Poplar Point submitted in response to GSA's request for lease proposals (RLP) for the Securities and Exchange Commission's (SEC) new headquarters in Washington, D.C. Part of the RLP addressed the SEC's requirements for having certain amenities located

near the offeror's proposed building.  After the proposals were submitted but before final evaluations,[1] the amenities requirement was amended by adding the italicized language:

> To meet these requirements, amenities must currently exist or the offeror must demonstrate to the reasonable satisfaction of the Government (i.e., through evidence of signed leases, construction contracts, letters of intent, etc.) that such amenities will exist by the Government's required occupancy date, *and are substantially likely to remain active and viable at that location throughout the term of the Lease*.

AR Tab 9 at 271-72 (emphasis added).  Poplar Point argues in its bid protest that GSA applied the amenities amendment to Poplar Point only in a prejudicially disparate manner.

Pending before the court is Poplar Point's motion to complete the administrative record, ECF No. 20, with documents related to the amendment of the amenities requirement.  Poplar Point contends that the administrative record submitted by the United States contains no explanation for why GSA issued the amenities amendment.  Poplar Point argues that it is entitled to documents before GSA that are relevant to GSA's decision to amend the amenities requirement and to apply the amenities amendment only to Poplar Point.

Pursuant to this court's September 26, 2019 Order, ECF No. 11, the government provided for *in camera* review documents related to the amenities amendment that were excluded from the administrative record.  Pursuant to this court's October 2, 2019 Order, ECF No. 18, the government also filed under seal a privilege log for these documents.  The government contends that the documents provided were not included in and are not

---

[1] A final award decision has not been made.

part of the administrative record, asserting the attorney client privilege and the deliberative process privilege.

Briefing on Poplar Point's motion to complete the record concluded on October 15, 2019, and the court deems oral argument unnecessary. For the reasons discussed below, Poplar Point's motion is **DENIED**.

**I.     THE SOLICITATION**

GSA issued the RLP on July 10, 2018, seeking offers for a lease of space to serve as the new headquarters of the SEC. The RLP permitted offerors to propose existing structures that met, or could be modified to meet, the RLP requirements, or undeveloped sites upon which a new SEC headquarters building could be constructed. Mot. at 2. Section 1.05(B) of the RLP required each offeror to demonstrate that certain amenities would be located near the offeror's proposed building site. *Id.* at 3. The amenities requirement provided:

> To meet the needs of SEC's employees, and the significant number of out of town and local visitors to SEC, amenities are to be located within the immediate vicinity of each offered building, but not to exceed 2,640 wlf measured along accessibility compliant, paved pedestrian pathways from the main entrance of an offered building to the main entrance of the amenity, in sufficient size and number capable of accommodating the demand imposed by a facility of 4,500 employees and guests (or in the case of a multiple building solution, that building's proportional share of employees and guests) such as:
>
> • A variety of fast-food, moderately priced dine-in, and table-service restaurants[], operating during early morning and evening hours as well as during a normal business day so as to provide a variety of options for breakfast, lunch, and dinner
> • USPS post office or mailing facility (e.g., FedEx, UPS, etc.)
> • Pharmacy
> • Dry cleaners

    • Coffee shop(s)
    • Bank(s)

*Id.* at 3 (quoting AR Tab 8 at 114).

To meet these requirements, the RLP provided that "amenities must currently exist or the offeror must demonstrate to the reasonable satisfaction of the Government (i.e., through evidence of signed leases, construction contracts, letters of intent, etc.) that such amenities will exist by the Government's required occupancy date." *Id.* at 4 (quoting AR Tab 8 at 114).

On September 4, 2018, Poplar Point and […] other offerors submitted initial proposals. *Id.* at 4. Poplar Point proposed to construct a new, single building in the Anacostia neighborhood of Washington, D.C. *Id.* […] other offerors submitted proposals: […] proposed sites within developed areas of downtown D.C. with existing amenities. *Id.* Poplar Point's proposed building site is located in a less developed area without existing amenities. *Id.*

GSA conducted discussions with Poplar Point between October 23 and October 25, 2018. *Id.* at 5. On December 20, 2018, GSA sent each offeror a letter setting forth the deficiencies in each proposal. *Id.* The letter to Poplar Point indicated that amenities were a "major deficiency" of its proposed site because the "offer identifies no existing or committed future amenities" located nearby, as required by the RLP. Resp. at 3, ECF No. 21 (quoting AR Tab 25 at 4055).

On December 20, 2018, the same day it issued the deficiency letters, GSA also issued RLP Amendment No. 0001 (Amendment). As quoted above, the Amendment, as

4

relevant here, changed the amenities requirements by adding the following italicized language:

> To meet these requirements, amenities must currently exist or the offeror must demonstrate to the reasonable satisfaction of the Government (i.e., through evidence of signed leases, construction contracts, letters of intent, etc.) that such amenities will exist by the Government's required occupancy date, *and are substantially likely to remain active and viable at that location throughout the term of the Lease*.

Mot. at 5-6 (quoting AR Tab 9 at 271-72) (emphasis added).

The […] offerors submitted revised proposals on January 25, 2019. Mot. at 6. Poplar Point's revised offer included supplemental information regarding the amenities it claimed would be constructed and retained on-site to meet the RLP Amendment. Resp. at 5-6. The GSA had not identified amenities as a deficiency in […] initial proposals and neither revised their final proposals to address the amenities Amendment. Mot. at 6.

On May 20, 2019, the GSA Lease Contracting Officer issued a letter to Poplar Point notifying the company that GSA had "determined that your offer fails to meet the minimum [amenities] requirements," and "will not be further considered for award under the RLP." *Id.* (quoting AR Tab 37 and 7607). The letter explained that during negotiations and in the deficiency letter, "the Government was clear that the amenities submissions in [Poplar Point's] offer posed a major deficiency and raised significant questions as to [Poplar Point's] ability to meet the minimum requirements." Resp. at 6 (quoting AR Tab 46c at 8062). GSA determined that Poplar Point's revised offer "entirely fail[ed] to establish, as is required by the RLP, that these amenities will remain active and viable throughout the term of the lease." *Id.*

The Contracting Officer's findings and determinations explained that "[t]he requirements of the amenities language in the RLP are meant to ensure that Government employees, contractors, visitors, and guests, have adequate facilities to enjoy meals, run errands, and accomplish their mission with efficiency, by utilizing amenities that are proximately located to the building . . . ." Resp. at 4 (quoting AR Tab 46c at 8057). The Contractor Officer further explained that "[o]f particular concern to the suitability of the offered amenities for this requirement is the fact that . . . SEC employees are only allotted 30 minutes for lunch. Add to this metric the fact that . . . the SEC attracts on average an additional 31,114 visitors per year . . ., placing even greater demands on the need for access to a wide variety of conveniently located amenities . . ., for the effective functioning of the agency." *Id.* at 4-5 (quoting AR Tab 46c at 8057).

## II. LITIGATION HISTORY

After receiving the GSA Contracting Officer's decision rejecting Poplar Point's proposal, Poplar Point filed a protest before the Government Accountability Office (GAO), which was denied on September 3, 2019. *Id.* at 6. Thereafter, Poplar Point filed a five-count complaint with this court, challenging, among other things, the application of the Amendment to only Poplar Point. *Id.* Count IV of the complaint alleges that GSA improperly treated Poplar Point in a prejudicially disparate manner from other offerors when it applied the Amendment's amenities requirement to Poplar Point. Mot. at 9.

At the September 26, 2019 initial status conference before this court, Poplar Point's counsel indicated that he believed the administrative record was incomplete because the record did not contain any explanation as to why the GSA decided to amend

the RLP amenities provision and then apply it only to Poplar Point.  *See also* Mot. at 9.  Based on that representation, the court issued an order on September 26, 2019, ECF No. 11, requiring the government to provide to the court for *in camera* review any agency communications related to the Amendment that were not included in the administrative record.  The documents submitted by the government are all email communications sent between agency counsel at GSA and SEC, agency personnel at GSA and SEC, and three consultants at Savills Studley, a commercial real estate company commissioned by GSA to assist with the procurement.  *See* Resp. at 7.  Attached to some of these email communications are earlier drafts of the RLP Amendment and drafts of the deficiency letters sent to the offerors.  *See id.*  On October 2, 2019, ECF No. 18, the court ordered the government to file under seal the privilege log prepared for these documents.  In the privilege log, the government, as noted, asserts the attorney client privilege and the deliberative process privilege.

On October 7, 2019, Poplar Point filed the pending motion to complete the administrative record with the withheld documents.  Poplar Point argues that the withheld documents must be included in the administrative record because they were generated during the course of the procurement, qualify as "core documents" under Appendix C ¶ 22 of the Rules of the United States Court of Federal Claims (RCFC), and are "directly relevant to whether or not GSA acted irrationally when it required only Poplar to demonstrate the continuing viability of its proposed amenities," as required by the Amendment.  Mot. at 11-18.  Poplar Point further argues that the deliberative process privilege should not apply to the withheld documents because the documents are

necessary to complete the record and because the government has not satisfied the procedural requirements for invoking that privilege. *Id.* at 18-19. Poplar Point contends that the attorney client privilege should not apply because the documents likely contain business advice as opposed to legal advice, and that the attorney client privilege was waived for any documents circulated to the Savills Studley consultants. *Id.* at 19-20.

The government responds that the withheld documents are privileged, Resp. at 13-19, and irrelevant because the government does not dispute that GSA knowingly applied the Amendment only to Poplar Point and not to the other offerors, *id.* at 8-12. The government argues that the GSA Contracting Officer's decision rejecting Poplar Point's proposal contains the only explanation for the Amendment and that "there are no additional documents explaining the underlying rationale behind the agency's decision to amend the RLP." *Id.* at 11, 13. The government further argues that to the extent Poplar Point is challenging the Amendment, Poplar Point's challenge is not timely. *Id.* at 12-13. In reply, Poplar Point contends that the requested documents are relevant to its protest, that its protest regarding the Amendment is timely, that the draft documents should have been included in the administrative record, and that the invoked privileges do not apply. Reply at 2-20.

**III.   LEGAL STANDARDS**

In a bid protest, "[t]he task of the reviewing court is to apply the appropriate Administrative Procedure Act (APA) standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018)

(quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009)). The "focal point for judicial review should be the administrative record already in existence" at the time of the agency's decision. *Axiom*, 564 F.3d at 1379 (citation and quotation omitted). This court's rules include a non-exhaustive list of "core documents" relevant to a bid protest that qualify for inclusion in the administrative record. RCFC Appendix C ¶ 22; *see Dyncorp Int'l LLC v. United States*, 113 Fed. Cl. 298, 303 (2013). Ordinarily, the government's designation of an administrative record is entitled to a presumption of completeness; however, courts have recognized that this can be rebutted with clear evidence to the contrary. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993).

A protestor may move to "complete" the record or to "supplement" the record. *See Linc Gov't Servs., LLC v. United States*, 95 Fed. Cl. 155, 158 (2010). A motion to "supplement" the record seeks to add materials that the agency did not consider but should be considered to permit a proper evaluation of the agency's decision. *See Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 167 (2011). The Federal Circuit has held that the parties' ability to supplement the existing record "should be limited to cases in which the omission of extra-record evidence precludes effective judicial review." *Axiom*, 564 F.3d at 1379 (quotation omitted).

A motion to "complete" the record seeks to add documents relevant to the challenged agency decision that were considered by the relevant agency decisionmakers but were not included in the record. *See Linc*, 95 Fed. Cl. at 158. "Where a party seeks to add evidence to the record that consists of materials that were generated or considered

9

by the agency during the procurement and decisionmaking process, such a request is properly viewed as a request to complete -- rather than supplement -- the administrative record, . . . and the court will ordinarily order the agency to complete the administrative record by adding pre-award records" that are "relevant to the key issue[s]" in the case. *Arkray USA, Inc. v. United States*, No. 14-233C, 2014 WL 2905127, at *4-*5 (Fed. Cl. Apr. 28, 2014) (citing *Comint*, 100 Fed. Cl. at 167). However, courts have held that "deliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the record." *Amfac Resort, LLC v. United States Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001); *Comint*, 100 Fed. Cl. at 169.

## IV.   DISCUSSION

In this case, Poplar Point argues that the record is not complete because the record does not contain an explanation for why GSA decided to amend the amenities requirement in the RLP. As noted above, in response to the court's order, the government has submitted to the court for *in camera* review materials related to the Amendment that were not included in the administrative record on the grounds of privilege. Having considered both parties' arguments and having reviewed these materials *in camera*, the court denies Poplar Point's motion.

The internal communications and draft documents that Poplar Point seeks for inclusion in the administrative record are inter-agency deliberative documents and include attorney client privileged communications that were properly excluded from the administrative record. *See Amfac,* 143 F. Supp. 2d at 12; *Comint,* 100 Fed. Cl. at 169; *Iron Bow Techs., LLC v. United States*, 136 Fed. Cl. 519, 532 (2018) (denying motion to

supplement administrative record with privileged documents).  The court has reviewed the documents and agrees with the government that all but one of the email communications is protected by the attorney-client privilege and all fit within the deliberative process privilege as inter-agency deliberative documents.[2]

Moreover, the court agrees with the government that the documents do not add anything, beyond what is already in the administrative record, regarding Poplar Point's claim that the Amendment was improperly applied differently to it.  *See Gulf Grp., Inc. v. United States*, 61 Fed. Cl. 338, 347 (2004) (disallowing discovery of draft documents and internal communications where the "record already contained the final determinations of the relevant decisionmakers and the contemporaneous reasons they gave in support of these decisions," and where the sought after documents "would likely not have contained additional facts or information").  Indeed, the government has *conceded* that Poplar Point was treated differently from the other […] offerors.  Resp. at 8, 10-11.  Whether GSA's application of the amenities requirement as amended was rational and supported hinges on the explanation in the record given by the GSA Contracting Officer based on his reading of the amenities provision and the Amendment.

---

[2] Poplar Point argues that the government has not satisfied the procedural requirements for invoking the deliberative process privilege, citing this court's decision in *Arkray*, 2014 WL 2905127, at *6 n.15.  *See* Mot. at 18-19.  In *Arkray*, the court rejected the government's assertion of the deliberative process privilege for post-award documents as a ground for exclusion from the record because, in part, those documents were "probative" of the key issues in the case and because the government had not satisfied the procedural requirements for invoking the privilege. 2014 WL 2905127, at *6 & n.15.  In this case, the court agrees with the government, based on the court's review of the *in camera* materials, that the withheld documents were properly excluded from the record as deliberative in the first instance, having concluded that the documents are not probative of the issues in the case.

## V. CONCLUSION

For the foregoing reasons, Poplar Point's motion to complete the administrative record is **DENIED.** The parties shall submit to the court a revised proposed briefing schedule for their cross-motions for judgment on the administrative record by **October 30, 2019**.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge
